1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   GRINDSTONE INDIAN RANCHERIA          No.  2:17-cv-02292-JAM-EFB
     and ONE HUNDRED PLUS MEN,
12   WOMEN AND CHILDREN LIVING ON
     THE GRINDSTONE INDIAN
13   RESERVATION,                         **ORDER DENYING PLAINTIFFS' MOTION
                                          FOR SUMMARY ADJUDICATION**
14                  Plaintiffs,

15        v.

16   TERRENCE OLLIFF, individually
     and as a beneficiary/trustee
17   of the Olliff Family Trust,
     DIANNE L. OLLIFF,
18   individually and as a
     beneficiary/trustee of the
19   Olliff Family Trust, and DOES
     1-10,
20
                    Defendants.
21

22        This case arises out of a dispute between Defendants

23   Terrence and Dianne Olliff and Plaintiffs Grindstone Indian

24   Ranceria et.al. over who owns a fifty-foot-wide strip of land

25   between their properties.  In October of 2017, the Grindstone

26   Indian Rancheria and 100 of its residents (collectively

27   "Plaintiffs") sued the Olliffs for trespass, intentional

28   infliction of emotional distress ("IIED"), negligent infliction

                                 1

of emotional distress ("NIED"), and declaratory judgment. Compl., ECF No. 1. Pursuant to the parties' stipulation, Plaintiffs' filed an amended complaint, adding claims for conversion and civil harassment. First Am. Compl. ("FAC"), ECF No. 10-2.

In response, Defendants raised four counterclaims. Answer at 15-26, ECF No. 12. The Court dismissed the counterclaims without prejudice because Defendants failed to plead an exception to Grindstone's tribal immunity. Order Granting Mot. to Dismiss, ECF No. 21. Defendants filed an amended answer, ECF No. 22, but did not attempt to revive their counterclaims.

Plaintiffs filed a motion for summary adjudication on their declaratory judgment claim. Mot. for Summ. Adjudication ("Mot."), ECF No. 29. Defendants oppose this motion. Opp'n, ECF No. 32. Because Defendants have demonstrated that genuine issues of material fact exist, the Court DENIES Plaintiffs' motion for summary adjudication.[1]

I.   FACTUAL ALLEGATIONS

The Grindstone Indians are a federally-recognized Indian Tribe. Response to Statement of Undisputed Facts ("RSUF") ¶ 1, ECF No. 32-3. The United States holds two parcels of land in trust for the Grindstone Indians: a parcel recorded in 1909 ("80-acre Parcel") and a parcel recorded in 1994 ("Parcel 2"). RSUF ¶ 2. Parcel 2's southern border lies along a portion of the 80-

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for August 13, 2019.

acre Parcel's northern border.  RSUF ¶ 3.  The Olliffs' property
is adjacent to the western borders of both the 80-acre Parcel and
Parcel 2.  Id.



BLM Survey, Exh. A. to Duran Decl., ECF No. 29-4.  The parties
dispute whether the area between points 14, 20, and 19 ("disputed
strip of land") is part of Parcel 2 or part of the Olliff Parcel.
RSUF ¶ 4.

In 2011, the Bureau of Land Management ("BLM") surveyed
Parcel 2.  RSUF ¶ 5.  See also BLM Survey.  The Olliffs
informally objected to the results of the survey, arguing they
either owned or held a prescriptive easement over a portion of
land that the BLM included in Parcel 2.  RSUF ¶ 6.  The Olliffs
did not, however, formally protest BLM's findings within 60 days
of receiving the survey.  RSUF ¶ 9.

The BLM Survey purported to resolve a discrepancy between
two prior surveys: the Pride Survey (conducted in 1976) and the
Knock Survey (conducted in 1893).  See Disputed Fact ¶ 7, ECF No.
32-3, see also BLM Survey at 14.  The Knock Survey used a cedar
post to mark the corner of the "center south 1/16 section," i.e.,
point 14.  Id.  The Pride survey, however, declined to recognize
Knock's cedar post as the center south 1/16 section corner.  Id.

Rather, Pride set the corner 48.15 ft. east of the cedar post, i.e., point 20. Id. Notwithstanding the Pride survey, the BLM survey found "the Knock monument . . . functions as the NW corner of the Grindstone Indian Rancheria, being that property described in the deed filed April 30, 1909." Id.

The parties advance two contrasting interpretations of what the BLM Survey says regarding who owns the disputed strip of land. Plaintiffs' position is that the survey adopted the Knock monument not only to the northwest corner of the 80-acre parcel, but also for the southwest corner of Parcel 2. DF ¶ 7. Conversely, Defendants maintain the BLM survey did not displace the Pride survey with respect to Parcel 2's boundaries; therefore, the Pride monument functions as the southwest corner of Parcel 2. Id.

## II. OPINION

### A. Legal Standard

A Court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying [the documents] which it believes demonstrate the absence of a genuine issue of a material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the movant makes this initial showing, the

4

burden rests upon the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Id. An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

B. Evidentiary Objections

Defendants raised evidentiary objections to ¶¶ 7-8 in Plaintiffs' statement of undisputed facts. RSUF ¶¶ 7-8. They argue that these two "undisputed facts" misstate the evidence cited. The court agrees. Defendants also objected to portions of Hoagland's Declaration (¶ 3 and Exh. C), ECF No. 29-3, as well as portions of Kirk's Declaration (¶¶ 6, 14-15), ECF No. 29-5. Objections, ECF No. 32-4. Plaintiffs responded. Response, ECF No. 35-1.

1. Objection 1

Paragraph 3 of Hoagland's declaration states, "I have reviewed and authenticated as true and correct copies all exhibits attached hereto." Accompanying Exhibit C contains arrows pointing to the disputed strip of land alongside a caption that says, "Unwritten rights and or use may exist for Parcel 2 of Book 5 P.M. 43." Defendants argue this caption is impermissibly speculative. Objection at 2-3. (citing Fed. R. Civ. Proc. 56(e); Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979)). The authority Defendants cite does not support their objection. Both Rule 56(e) and Thornhill, 594 F.2d at 738 discuss the sufficiency of evidence adduced by non-moving parties to defeat a motion for summary judgment, rather than the evidence brought by a moving party to satisfy his initial burden.

5

Furthermore, Hoagland's sworn affidavit contends his survey was based on "experience as a Professional Land Surveyor with the State of California and as an employee of Compass Consulting Incorporated." Hoagland Decl. ¶¶ 4-7; Response at 2-3. Defendants' objection is OVERRULED.

### 2. Objection 2

Paragraph 6 of Kirk's Declaration says, "However, for decades prior to 1994, the Grindstone Indians used portions of Parcel 2 for ingress and egress to the Rancheria. This use was open and obvious." Defendants object, arguing the statements are conclusory, lack foundation, and are vague and ambiguous. Objection at 3. The Court agrees that the statements lack foundation. Contrary to what Plaintiffs argue, Kirk's role as the Tribe's Chairman does not necessarily afford him personal knowledge of what Parcel 2 was used for or for how long. See Response at 3. Defendants' objection is SUSTAINED.

### 3. Objection 3

Paragraph 14 of Kirk's Declaration says, "The BLM Survey determined that in 1976, Surveyor George Pride had moved a marker that had been in existence for more than eighty years by the original surveyor T.S. Knock in 1983." Defendants object, arguing the statement is conclusory, hearsay lacking foundation, and misstates the evidence. Objection at 4. The Court agrees that this statement misstates the evidence, and is not, as Plaintiffs argue, "an accurate paraphrase of the BLM Field Notes." See Response at 4. Defendants' objection is SUSTAINED.

///

///

1          4.    Objection 4

2          Paragraph 15 of Kirk's Declaration says, "The 2011 BLM

3    survey re-established the original Knock boundary line,

4    Overruling [sic] Pride's boundary line, and providing the

5    disputed land along the border between Parcel 2 and the Olliff

6    Parcel to the Grindstone Rancheria."  Defendants contend this

7    statement is conclusory, hearsay lacking foundation, and

8    misstates the evidence.  Objection at 5.  The Court agrees that

9    the statement misstates the evidence.  Kirk's interpretation of

10   the BLM Survey and accompanying field notes go beyond what the

11   BLM expressly concluded.  Defendants' objection is SUSTAINED.

12        C.    Analysis

13         The Declaratory Judgment Act allows a district court to

14   "declare the rights and other legal relations of any interest

15   party seeking such declaration."  28 U.S.C. § 2201(a).  Here,

16   Plaintiffs request a declaration from the Court affirming that

17   the Bureau of Land Management's 2011 Cadastral Survey

18   conclusively established Grindstone Rancheria's ownership of the

19   disputed strip of land.  The Court denies Plaintiffs' motion

20   because the question of whether the BLM Survey included the

21   disputed strip of land in Parcel 2 is a genuine issue of material

22   fact.

23         Plaintiffs correctly maintain that federal law grants the

24   BLM authority perform cadastral surveys of public lands.  See

25   Mot. at 13-14.  These surveys, they argue, are dispositive in

26   establishing the boundaries of public land.  Mot. 12-15.  And

27   because Defendants failed to timely protest the BLM Survey in

28   2011, they are barred from doing so now.  Mot. at 16-18.

Defendants, however, neither refute BLM's authority to prescribe the metes and bounds of public land nor the conclusiveness of the 2011 survey.  Rather, they contend the BLM Survey, on its face, does not include the disputed strip of land as part of Parcel 2. Opp'n at 7.

Defendants concede that the BLM Survey is dispositive in prescribing the boundaries of Parcel 2.  Opp'n at 3-4.  They also accept that the Knock monument functions as the northwest corner of the 80-acre Parcel.  Opp'n at 3.  But they reject Plaintiffs' contention that the BLM Survey also set the Knock monument as the southwest corner of Parcel 2.  Opp'n at 4-5, 7.  The exhibits to Defendants' brief support their opposition.  See Exh. A-C to White Decl., ECF No. 32-1.  Relying on these exhibits, a reasonable juror could interpret Parcel 2 and the 80-acre Parcel as having two different corners.  See id.  The Pride Survey, the BLM Survey, and the White Survey all show an unaccounted-for gap between the line that appears to be the western border of Parcel 2 and the line that appears to be the eastern border of the Olliffs' property.  See id.

Plaintiffs' opening brief does not identify anything in the BLM Survey or otherwise that accounts for this gap or clearly states that Parcel 2's western border extends as far as the 80-acre Parcel's western border.  In fact, one of their exhibits counsels the Court against accepting Plaintiffs' interpretation of the BLM Survey.  Exhibit B to Duran's declaration is the BLM's response to Defendants' informal objections to the 2011 survey.
///
///

The letter states:

> With acceptance of Knock's center south 1/16 corner,
> the monuments set during the 1976 survey by Pride to
> mark the corners of Parcel 2, were accepted during our
> resurvey as marking the corner of said parcel, but not
> as points on the north and south centerline of the
> section.

Exh. B. to Duran Decl. at 1.  This statement is wholly consistent
with Defendants' argument that the Knock monument marks the
northwest corner of the 80-acre Parcel and the Pride monument
marks the southwest corner of Parcel 2.  See Opp'n at 3-5, 7.  It
also reinforces Defendants' position that they are not attempting
to challenge the BLM Survey; in this respect, they agree with it.

Plaintiffs' reply does not meaningfully respond to
Defendants' argument that disputed issues of fact preclude
summary adjudication.  Reply ISO Mot. for Summ. Adjudication
("Reply"), ECF No. 35.  Instead, they double-down on their theory
that Defendants failed to timely exhaust their administrative
remedies and are now using a "backdoor approach" to "completely
contradict and challenge the BLM Survey."  Reply at 2-5.
Despite these accusations, Plaintiffs are the only ones who seek
to muddle the distinction between interpreting the BLM's survey
and challenging the validity of that survey.  See Reply at 3-4.
Citing the APA, 5 U.S.C. § 704, Plaintiffs argue the Court is
without authority to interpret the BLM Survey.  Reply at 3-4.
This argument misses the mark.  The APA allows courts to review
the accuracy of an administrative decision under certain
circumstances.  5 U.S.C. § 702.  It does not curtail the Court's
ability to discern how an agency's decision applies to a set of
facts.  As explained above, Defendants do not challenge the

accuracy of the BLM Survey; they challenge Plaintiffs' reading of
it.

Anticipating their exhaustion argument might fail,
Plaintiffs contend they are entitled to summary adjudication
because neither adverse possession nor prescriptive easements are
permitted on Indian land.  Mot. 17-18.  Both of these arguments
fail, as they assume what has not yet been proven: that
Grindstone Rancheria ever owned the disputed strip of land.

Finally, Plaintiffs insist the Court should grant their
motion for summary adjudication even if they failed to prove
their ownership interest in the disputed strip.  Mot. at 15-16;
Reply at 4-5.  They argue 25 U.S.C. § 194 places the burden of
proving ownership on non-Indians—here, the Olliffs—when there's a
property dispute between Indians and non-Indians.  Id.  Not
quite.  Section 194 does not place the burden of proving
ownership on non-Indians until "the Indian [has made] out a
presumption of title in himself from the fact of previous
possession or ownership."  The parties dispute both who
previously owned the land and who previously possessed it.  See
DF ¶¶ 8, 13-15.  Given this dispute, Plaintiffs cannot show, as a
matter of law, that they are entitled to Section 194's
presumption.  Accordingly, Defendants were not obliged to prove
their ownership of the disputed strip of land to defeat
Plaintiffs' motion.

Questions of "where the line run by a survey lies on the
ground, and whether any particular tract is on one side or the
other of that line, are questions of fact."  United States v.
State Inv. Co., 264 U.S. 206, 211 (1924), see also U.S. v.

<u>Pappas</u>, 814 F.2d 1342, 1343 n.2 (9th Cir. 1987).  These issues of fact are material and preclude the Court from granting summary adjudication on Plaintiffs' declaratory judgment claim.

III.   ORDER

For the reasons set forth above, the Court DENIES Plaintiffs' motion for summary adjudication on their declaratory judgment claim.

IT IS SO ORDERED.

Dated:  August 13, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE